UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,      :      NO. 1:11-CV-00111
ex rel. SCOTT MEYER,           :
                               :
        Plaintiff,             :
                               :      OPINION AND ORDER
     v.                        :
                               :
KEMPF SURGICAL APPLICANCES,    :
INC., et al.                   :
                               :
        Defendants.            :


        This matter is before the Court on Defendants' Motion

to Dismiss (doc. 12), Plaintiff's response in opposition thereto

(doc. 17), and Defendants' reply in support thereof (doc. 19).

For the following reasons, the Court DENIES the motion (doc.

12).

**I. Background**

        Pursuant to the Anti-Kickback Statute, 42 U.S.C. §

1320a-7b (the "AKS") and the False Claims Act, 31 U.S.C. §§

3729-3733 (doc. 34)(the "Act" or the "FCA"), Relator filed his

complaint in this qui tam action on February 25, 2011, alleging

that Defendants submitted false claims to Medicare and other

federally-funded programs for (i) custom-fabricated or custom-

molded orthotic devices when patients actually received "off-

1

the-shelf" devices; (ii) add-on components to orthotic devices that were not actually provided to patients; (iii) components that were provided but had already been bundled in the base price of the device; and (iv) orthotic services provided by unqualified personnel who were not supervised by a licensed orthotist (doc. 4).    In addition, Relator alleges that Defendants receive impermissible kickbacks from the medical device manufacturer DeRoyal in exchange for purchasing orthotic and other equipment from DeRoyal (Id.).   On November 29, 1022, the federal government declined to intervene in this action (doc. 9), and it was thus ordered unsealed (doc. 10).

According to the complaint, Relator is an Ohio-licensed orthotist, and he was employed by Defendants as an orthotist from April 2, 2010 until January 27, 2011.  Defendant Kempf Surgical Appliances, Inc., is an Ohio corporation that supplies durable medical equipment and other medical supplies, including orthotics, orthopaedic devices, and prosthetics, to individual patients and to hospitals.  Defendant Stephen R. Kempf is the company's president and owner.

In Count I, Relator claims that (i) Defendants knowingly presented or caused to be presented to officers or employees of the United States false claims for payment or approval, including improper claims for orthotic devices and other medical products, in violation of the False Claims Act, 31

U.S.C. §§ 3729(a)(1)(A); (ii) Defendant knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, in violation of 31 U.S.C. §§ 3729(a)(1)(B) by making or using false billing records that reflected upcoded, unbundled and/or otherwise improper charges for orthotic devices and other medical products; and (iii) Defendants accepted kickbacks from DeRoyal in violation of the Anti-Kickback Statute, 42 U.S.C. §1320a-7b.  In Count II, pursuant to 31 U.S.C. §3730(h), Relator alleges that he was retaliated against and constructively discharged when he raised questions about Defendants' billing practices and refused to participate in the alleged fraud.

Defendants move to dismiss Relator's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Relator has failed to set forth plausible causes of action, in part because he has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

## II.  The Applicable Standards & the Statutory Framework

### A. Federal Rule of Civil Procedure 12(b)(6)

Typically, a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint.  The basic federal pleading requirement is contained

3

in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

However, because the False Claims Act is an anti-fraud statute, complaints alleging violations of the Act must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 510 (6th Cir. 2007). Rule 9(b) of the Federal Rules governs all averments of fraud or mistake and mandates that the circumstances constituting the fraud or mistake be stated with particularity. Fed. R. Civ. P. 9(b). Thus, a complaint alleging violations of the False Claims Act must minimally include "the time, place, and content of the alleged misrepresentation…; the fraudulent scheme; the fraudulent intent

of the defendants; and the injury resulting from the fraud."
Bledsoe, at 504 (internal quotations and citations omitted).  In
the context of a False Claims Act case, "pleading an actual
false claim with particularity is an indispensable element of a
complaint…."  Id.  However, a relator need not plead "every
specific instance of fraud where [his] allegations encompass
many allegedly false claims over a substantial period of time."
Id. at 509.  Instead, "where a relator pleads a complex and far-
reaching fraudulent scheme with particularity, and provides
examples of specific false claims submitted to the government
pursuant to that scheme, a relator may proceed to discovery on
the entire fraudulent scheme."  Id. at 510.

**B.  The False Claims Act**

Congress passed the original False Claims Act in 1863
"to combat rampant fraud in Civil War defense contracts."  S.
Rep. No. 99-345, at 8, reprinted in 1986 U.S.C.C.A.N. 5266, 5273
(1986).  In its current form, the FCA imposes liability on any
person who "knowingly presents, or causes to be presented, to an
officer or employee of the United States government…a false or
fraudulent claim for payment or approval."  31 U.S.C. §
3729(a)(1)(2008).  The statute further imposes liability on a
person who "uses, or causes to be made or used a false record or
statement to get a false or fraudulent claim paid or approved by

5

the Government;" who "conspires to defraud the government by getting a false or fraudulent claim paid or approved by the government," or who uses "a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government." Id. at (a)(2),(3),(7). To satisfy the statute's knowledge requirement, a person must "(1) ha[ve] actual knowledge of the information; (2) act in deliberate ignorance of the truth or falsity of the information; (3) or act in reckless disregard of the truth or falsity of the information," but "no specific intent to defraud is required." Id. § 3729(b).

The FCA does not create a private cause of action, but permits a person, designated a "Relator" to bring a civil action "for the person and for the United States government…in the name of the government." 31 U.S.C. § 3730(b).

The Supreme Court has affirmed an aggressive reading of the FCA, explaining that "Congress wrote expansively, meaning to 'reach all types of fraud, without qualification, that might result in financial loss to the government.'" Cook County, Ill. V. United States ex rel. Chandler, 538 U.S. 119 (2003)(quoting United States v. Neifert-White Co., 390 U.S. 228, 232 (1968)).

## C.  The Anti-Kickback Statute

The Anti-Kickback Statute prohibits any person or entity from offering, making or accepting payment to induce or

reward any person for referring, recommending or arranging for federally funded medical services, including services provided under the Medicare and Medicaid programs:

(b) Illegal remunerations.

(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind --

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction

7

thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7b(b).

## III.  Defendants' Motion to Dismiss

### A. Plaintiff's Complaint Meets the Heightened Pleading Standards of Rule 9(b) and States a Claim under the False Claims Act

"[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." Michaels Building Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988). Relator must have alleged in his complaint the time, place and content of the misrepresentation; the fraudulent scheme; Defendants' fraudulent intent; and the resultant injury.  See U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 518 (6th Cir. 2009).

Relator's complaint adequately and clearly puts Defendants on notices of the substance of his claims and sets forth allegations supporting the fraudulent scheme, Defendants' fraudulent intent, and the resultant injury.  Defendants contend that the complaint is nonetheless deficient because Relator has not provided fraudulent claims actually submitted for payment. Given Relator's position in the company, the short time he

worked there, and the fact that he is no longer employed there, the full panoply of claims submitted to the government by Defendants for payment is only available through discovery. However, Relator did allege representative instances of what he claims are the impermissible billing practices: for example, his complaint describes the medical device, the services provided, and the improper bill related to P.C. for the dates of service of May 26, 2009 and October 7, 2010; for O.S. for the date of service of April 13, 2010; and for M.H. for April 20, 2010 (doc. 4). In addition, he alleged that one of Defendants' employees routinely engaged in fraudulent billing and stated in response to Relator questioning the company's policy of billing prefabricated devices as custom-made, "This is how we make our money." As to the allegations of kickbacks, Relator provides a specific example of the allegedly impermissible inducement: to wit, that Defendants accepted money and a trip to a local casino from a supplier of medical devices in exchange for using that supplier's products. He also alleges that one of the kickback recipients stated that Defendant Kempf routinely accepted gifts from that supplier in exchange for using its products.

Relator has come forth with enough to show intent, injury and the who/what/when/how of the allegedly fraudulent scheme and of the impermissible kickbacks to satisfy his burden

at this stage. Defendants simply cannot legitimately assert that they are not adequately on notice of the nature and particularities of Relator's claims against them.  The failure to attach actual fraudulent claims to the complaint is not fatal to Relator's case.  The purposes of Rule 9(b) are amply satisfied with the allegations Relator sets forth.  Taking the allegations as a whole and accepting them as true, the Court draws a strong inference that false claims were submitted to the government as a result of the schemes described in the complaint.  And having provided the requisite who, what, where, when, and how, Relator has complied with the dictates of Rule 9(b).  Accord U.S. ex rel. Fry v. The Health Alliance of Greater Cincinnati, 2008 WL 5282139 (S.D. Ohio, Dec. 18, 2008); U.S. ex rel. Repko v. Guthrie Clinic, 557 F. Supp.2d 522, 527 (M.D. Pa. 2008) ("attachment of some or all of the allegedly fraudulent claims would serve no further purpose consistent with Rule 9(b) because defendants are on notice that the basis of the alleged fraud in each claim is the relationship between the defendants, not anything unique to a particular claim, that has caused these claims to be allegedly fraudulent"); U.S. ex rel. McDonough v. Symphony Diagnostic Services, Inc., 2012 WL 628515 (S.D. Ohio, Feb. 27, 2012).

Relator has alleged that Defendants billed for custom

10

devices when off-the-shelf devices were actually provided; that Defendants billed for add-on components of devices that were not actually provided; and that Defendants billed for add-on components that were provided but that were also billed for as part of a bundled base price.  As noted above, he provided specific representative examples to support each of these allegations and to satisfy the burden of Rule 9(b).  Relator also alleges that Defendants routinely billed for orthotic services provided by someone who was unqualified and unsupervised.  According to Ohio Revised Code §4779.04, someone who is providing orthotic services under the supervision of a licensed orthotist may only do so during the initial evaluation if the supervisor is "physically present" or during other visits if the supervisor is "either physically present at the location where the individual is practicing or is readily available to the individual through some means of telecommunication and is in a location that under normal circumstances is not more than sixty minutes travel time away from the location where the individual is practicing."  Ohio Rev. Code §4779.04(B),(C). Defendants argue that this aspect of Relator's claims should be dismissed because Relator has not shown that the supervising orthotist was not physically present when the unlicensed individual provided services.  Specifically, Relator alleges

11

that neither he nor Defendant Kempf "supervised" an unlicensed employee's services.  However, Defendants note that Relator also states that Defendant Kempf was typically in the office building during regular business hours, thus, according to Defendants, defeating Relator's claim because Defendant Kempf was "physically present."  Defendants have conflated two distinct terms in the applicable statute: Relator has alleged that, physically present or not, Defendant Kempf did not provide supervision, which is a distinct component of the statute.  It may well be that Defendant Kempf did provide supervision and was physically present when an unlicensed employee provided orthotic services, which could then render this aspect of Relator's case toothless.  But this level of detail must be fleshed out in discovery as it is a factual dispute not suitable to resolution on a motion to dismiss.  At this stage, again, Defendants are sufficiently on notice of the nature of the charges against them.

For the foregoing reasons, the Court finds that Relator has set forth sufficient factual allegations from which the Court may plausibly infer a fraudulent billing scheme conducted by Defendants and that Defendants benefited from impermissible inducements.  Thus, the complaint adequately states a claim and survives the motion to dismiss.

12

**B. The Retaliation Claim Survives**

As Relator notes, employment retaliation is an inherently fact-driven claim. Here, Relator alleges that he was constructively discharged because he refused to participate in the alleged fraud, and his attempts to stop the fraud were fruitless. Defendants cast this as "mere dissatisfaction" with his treatment on the job. The Court finds that the allegations that Relator was in essence required to participate in allegedly illegal conduct are sufficient, under the circumstances presented here, to permit the Court to plausibly infer a cause of action for retaliation under the False Claims Act.

**III.  Conclusion**

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss (doc. 12). Discovery shall be completed by April 1, 2014; dispositive motions shall be filed by May 1, 2014; a final pretrial conference has been scheduled for September 18, 2014, at 2:00 P.M.; with a five-day jury trial to commence on October 21, 2014.

SO ORDERED.


Dated:  April 9, 2013      s/S. Arthur Spiegel_____
                           S. Arthur Spiegel
                           United States Senior District Judge